UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,

v.

NICHOLAS ALVAREZ,
                              Defendant.
-------------------------------------------------------------x

**MEMORANDUM DECISION**

S3 11 CR 169 (VB)

Briccetti, J.:

    Pending before the Court is defendant Nicholas Alvarez's motion to dismiss Counts Five and Ten of Indictment S3 11 Cr. 169 for lack of venue. Both of these counts relate to an individual identified in the S3 indictment as Victim-5. For the reasons set forth below, although the Court has serious doubts about whether venue in this district is appropriate, the Court will defer ruling on this motion until after the anticipated motions in limine – which the Court has been advised will include a motion by the government under Rule 404(b) to admit the evidence relating to Victim-5 even if Counts Five and Ten are not tried at this time – are briefed and decided.

## BACKGROUND

    Defendant is charged in the S3 indictment with interstate transportation of individuals for the purpose of prostitution (Count One); persuading individuals to travel for the purpose of prostitution (Counts Two through Four); attempting to persuade an individual (Victim-5) to travel for the purpose of prostitution (Count Five); sex trafficking by force (Counts Six through Nine); attempted sex trafficking of a minor (Victim-5) (Count Ten); kidnapping (Count Eleven); and failing to register under the sex offender registration and notification act (Count Twelve).

    The government has proffered that it expects to prove the following at trial: Defendant operated a prostitution business, in which he marketed the sexual services of women, as well as

1

one minor (Victim-5), to male customers. Alvarez took the women and the minor (the "victim-witnesses") to various locations in several states, including Illinois and New York, to engage in prostitution. Defendant recruited the victim-witnesses and advertised their services on the Internet. He provided the victim-witnesses with cell phones so they could answer calls from prospective customers themselves, and had some of the victim-witnesses walk the streets looking for customers. Defendant dictated the prices charged and required the victim-witnesses to give him all the money they earned. Defendant lured the victim-witnesses to work for him by promising financial security and fair treatment, but then physically, mentally, and sexually abused them as soon as they started working for him. Although several of the victim-witnesses tried to leave defendant, their fear of retribution compelled them to stay.

Regarding Victim-5, the government has proffered the following: In October 2010, defendant, then in Illinois, persuaded Victim-5, then 16 years old and living in Oklahoma, to travel to Illinois to work for him as a prostitute. Victim-5 arrived in Chicago on November 1, 2010, and stayed in a hotel room paid for by defendant. Over the next several days, defendant had Victim-5 walk the streets of Chicago looking for customers. He also advertised Victim-5's services in Illinois on the Internet, and provided her with a cell phone so she could arrange "dates" with customers herself. Shortly after Victim-5 arrived in Illinois, defendant sexually abused and berated and insulted her, and physically abused another prostitute in Victim-5's presence. After learning that Victim-5 was 16 years old, he continued to arrange "dates" for her in Chicago. He also discussed taking Victim-5 to other locations to engage in prostitution, including "up North," which she understood, based on conversations with defendant and others, to refer to New York City. On November 4, 2010, defendant and Victim-5 were arrested in a sting operation in Illinois. Victim-5 was sent to a group home for adolescents, and defendant

spent several weeks in jail. After his release, defendant recruited additional women prostitutes and traveled with them to Westchester County.

As to the venue issue regarding Victim-5 and Counts Five and Ten, the government concedes that "much of the defendant's acts . . . occurred in Illinois." The government does not contend, for example, that defendant made telephone calls or sent electronic communications into this district in connection with the alleged attempt to traffic Victim-5 as a prostitute. Nevertheless, the government contends the evidence at trial will demonstrate that defendant "knew or reasonably should have foreseen that substantial acts planned to culminate in the commission of the attempted crimes, such as renting hotel rooms, would occur in New York . . . and that his conduct would affect interstate commerce in New York." For that reason, according to the government, venue is proper in this district.

Defendant has a rather more straightforward argument: Assuming the truth of the government's proffer, the attempt offenses at issue were committed entirely in Illinois, and therefore venue does not lie in this district.

## ANALYSIS

There is no "summary judgment" procedure in federal criminal cases. Thus, ordinarily, if an indictment alleges that an offense occurred in this district "and elsewhere," as is alleged in Counts Five and Ten, a pretrial motion to dismiss for lack of venue should be denied and the question of whether the government can prove venue should be left for trial. See United States v. Ohle, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010).

The circumstances here, however, are somewhat out of the ordinary. First, because Counts Five and Ten charge attempt crimes, venue lies in any district in which the defendant took a substantial step towards the commission of the substantive offense. United States v.

Davis, 689 F.3d 179, 187 (2d Cir. 2012). All of the actual substantial steps the government alleges defendant took with respect to these two counts occurred in Illinois, not New York. In other words, as a matter of logic, if defendant did what the government says he did – attempted persuasion of Victim-5 to travel to New York to engage in prostitution and attempted sex trafficking of Victim-5, a minor, in New York – these attempt offenses were "completed" in Illinois; nothing was left to be done anywhere else.

The government's argument, however, is that even if all of the actual conduct took place in Illinois, defendant knew or should have foreseen that acts in furtherance of his intended crimes, such as renting hotel rooms, would take place in the Southern District of New York. In short, the government contends that because defendant attempted to commit a crime in New York, even though the conduct constituting the attempt took place entirely in Illinois, venue in New York is appropriate.

The Court finds this argument a bit convoluted. The simple question is – where did defendant attempt to commit the two offenses at issue, Illinois or New York, or both? Assuming the truth of the government's proffer, it would seem the attempt crimes were committed only in Illinois, or perhaps Oklahoma, but not New York. It does not appear anything was left to be done as of the time defendant and Victim-5 were arrested in Illinois, never to see each other again. Prior to the arrest, defendant may have foreseen that the substantive offenses – i.e., the actual persuading of Victim-5 to travel for the purpose of prostitution and the actual sex trafficking of a minor – would be completed in New York. But defendant is not charged with these substantive offenses in the S3 indictment, and the Court is having difficulty seeing how

what defendant intended to do in the future has anything to do with the attempt crime he already committed in Illinois, assuming the facts are as the government says they are.[1]

To determine whether venue lies in a particular district, the Court must identify the conduct constituting the offense and then discern the location of the commission of the criminal acts. See United States v. Davis, 689 F.3d at 185-86; United States v. Reed, 773 F.2d 477, 481 (2d Cir. 1985). Venue can lie in more than one district, but for venue to lie in any particular district there must be substantial contacts with that district, taking into account such factors as "the site of defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." United States v. Reed, 773 F.2d at 481. Moreover, "there must be some 'sense of [venue] having been freely chosen' by the defendant," United States v. Davis, 689 F.3d at 186 (quoting United States v. Reed, 773 F.2d at 481), meaning it must be foreseeable to defendant that some act would occur in the district of venue. United States v. Davis, 689 F.3d at 186; United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003). Finally, acts that are "merely prepatory" to the commission of an offense will not support venue. See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1190 (2d Cir. 1989).

Here, it would appear the conduct constituting the attempt crimes was defendant's efforts to persuade Victim-5 to travel to Illinois for the purpose of engaging in prostitution, and then

---

[1] The Court is unmoved by the government's statement that the facts proffered in its letter briefs do not constitute a full proffer of the evidence it will present at trial. The venue question is an important one that both sides have spent considerable time and effort briefing in a case that has been pending for more than 20 months, and indeed is a question that evidently informed the government's strategy as to what offenses to charge in the most recent superseding indictment. The government is entitled to think strategically, of course. But, at this point, it seems fair that the government should fully lay its cards on the table regarding venue; if it has any other facts to proffer, it should do so before trial.

once in Illinois, his efforts to make arrangements (e.g., advertising on the Internet, giving her a cell phone to arrange her own "dates," paying for her hotel room) for her actually to engage in a commercial sex act, and his efforts to use violence and threats of violence to cause her to engage in a commercial sex act, even after he learned she was 16 years old. The site of defendant's acts was Illinois, not New York; the elements and nature of the attempt crimes – defendant's intent to commit the substantive crimes and his engaging in conduct amounting to a substantial step towards their commission – occurred in Illinois, not New York; the place that suffered the effects of the attempt crimes was Illinois, because defendant's involvement with Victim-5 ended before they made any real efforts to travel to New York; and it was foreseeable to him that his acts would occur in Illinois, not New York (indeed, nothing actually did occur in New York). In other words, all of the substantial contacts appear to be with Illinois, not New York. For these reasons, the Court has serious doubts that venue lies in the Southern District of New York.

In addition, the Court is concerned with the possible prejudicial spillover to defendant if the evidence relating to Victim-5 is offered to prove Counts Five and Ten at trial, and then the Court granted a Rule 29 motion at the close of the government's case dismissing those counts for failure to prove venue.[2] At this point, the parties have not yet briefed the question of whether the evidence relating to Victim-5 would nonetheless be admissible as similar act evidence under Rule 404(b) to prove the remaining counts of the S3 indictment. If that evidence is not admissible under 404(b), and Counts Five and Ten are dismissed at trial, it may be impossible realistically to expect the jury to disregard the now-inadmissible evidence it has heard regarding Victim-5.

---

[2] The government's burden of proof on venue is by a preponderance of the evidence, not beyond a reasonable doubt. United States v. Davis, 689 F.3d at 185.

Finally, the Court notes that if it allows Counts Five and Ten to go to trial and then grants a Rule 29 motion during trial dismissing those counts for lack of venue, double jeopardy would likely have attached to those counts and the government would not be permitted to re-try defendant on those counts in a district in which venue would clearly lie, such as the Northern District of Illinois. If, on the other hand, the government chooses not to try these counts, or the Court grants a motion to dismiss prior to trial, it would appear these two counts could be transferred to and tried in another district which has venue.

For all these reasons, it seems prudent to await briefing on the question of whether the conduct relating to Victim-5, as now alleged in Counts Five and Ten, would be admissible as similar act evidence even if Counts Five and Ten were not tried. If the Court determines the evidence is admissible – and nothing herein should be interpreted as indicating a ruling one way or the other on this issue – then the Court would likely defer ruling on defendant's venue motion until a Rule 29 motion is made at trial. If the Court determines the evidence is inadmissible, then as a matter of fairness to both the defendant and the government, the Court will reconsider the motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court defers ruling on defendant's motion to dismiss Counts Five and Ten of the S3 indictment until after the anticipated motion in limine to admit the evidence relating to Victim-5 as similar act evidence is briefed and decided.

Dated: October 9, 2012
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge