UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,          :
                                   :     **MEMORANDUM**
v.                                 :     **OPINION AND ORDER**
                                   :
NICHOLAS ALVAREZ,                  :     S3 11 CR 169 (VB)
                    Defendant.     :
--------------------------------------------------------------x

Now pending is defendant Nicholas Alvarez's motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his term of imprisonment to "time served," or in the alternative, to serve under home confinement the remaining balance of his 235-month sentence of imprisonment. (Doc. #164 at ECF 3, 24).[1] Alvarez's principal argument is that his health conditions place him at greater risk of contracting COVID-19 in prison and developing serious complications if he does.

For the following reasons, the motion is DENIED.

First, Alvarez's offenses were exceptionally serious. At trial, the government established that from at least June 2010 to February 2011, Alvarez operated an interstate prostitution business in which he marketed the sexual services of at least six women. Alvarez advertised the women's sexual services on the website backpage.com by posting, among other things, sexually explicit photographs of the women and a telephone number for customers to call to arrange

---

[1] "Doc. #__ at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

The government disputes whether Alvarez's request as styled—that the Court order his transfer to home confinement to serve the balance of his term of imprisonment—is proper. However, Section 3582(c)(1)(A) states in pertinent part: "[T]he court . . . may reduce the term of imprisonment (and may impose a term of . . . <u>supervised release with or without conditions</u> that does not exceed the unserved portion of the original term of imprisonment)." Home confinement would be a condition of supervised release if Alvarez were released. Accordingly, the Court need not address the government's issue with the phrasing of Alvarez's request.

1

sexual services.  Alvarez also had some of the women walk the streets to solicit business.  Alvarez dictated the prices the women charged their customers and forced the women to give him all of the money they earned from their prostitution.

Using psychological manipulation by falsely promising them protection, financial security, and fair treatment, Alvarez recruited isolated and vulnerable women—including a 16-year-old girl—to work for him.  After the women agreed to work for Alvarez, he used threats of violence, and actual violence, to control them.  Indeed, Alvarez physically and psychologically abused his victims, including by beating some of them, often in front of the others, to spread fear, isolating them from their loved ones, and degrading them by calling them profane names.

At trial, Alvarez was convicted on one count of transporting certain victims in interstate commerce with the intent that the victims engage in prostitution; two counts of knowingly persuading, inducing, enticing, and coercing certain victims to travel in interstate commerce for the purpose of engaging in prostitution; and two counts of causing certain victims to engage in a commercial sex act, by means of force, fraud, and coercion, from which the defendant benefitted financially.  Alvarez later pleaded guilty to failing to register or update his registration under the Sex Offender Registration and Notification Act ("SORNA") after traveling outside of New York State, where he was a registered sex offender.

On October 11, 2013, after careful consideration of all the 18 U.S.C. § 3553(a) factors, the Court imposed a sentence of 235 months' imprisonment, to be followed by a ten-year term of supervised release.  The Court took note of Alvarez's prior criminal history, which began in the 1990s and included criminal possession of a weapon and assault, and his history of recidivism.  Indeed, Alvarez began his sex trafficking enterprise only a few months after his release from prison on two first-degree rape convictions, the crimes having occurred within days of one another.  The Court also considered that although Alvarez likely failed properly to register as a

sex offender so that he could avoid detection of his prostitution enterprise, he ultimately pleaded guilty to the SORNA count.  In addition, the Court considered Alvarez's history of mental health disorders, limited cognitive ability, chronic drug and alcohol abuse, and his troubled upbringing.  The sentence imposed was sufficient but not greater than necessary to reflect the seriousness of Alvarez's crimes, promote respect for the law, provide just punishment, afford adequate deterrence, and, importantly, protect the public from further crimes of the defendant.

Alvarez has been detained since his arrest on February 4, 2011.  To date, he has served 113 months of his sentence, or about forty-eight percent of the 235-month sentence imposed.

Second, although Alvarez has health conditions that place him at higher risk of a severe outcome from COVID-19, he has not demonstrated "extraordinary and compelling reasons" to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  Alvarez is forty-four years old.  He is neither elderly nor infirm.  He has been diagnosed with, among other things, long-term bronchial asthma and hyperlipidemia.  He is also slightly overweight and has a higher than normal blood sugar level, but he does not have diabetes.  And according to his medical records from Federal Correctional Institution ("FCI") Fort Dix, Alvarez's various medical conditions have been carefully monitored by the Bureau of Prisons ("BOP") and well-managed with medication and use of an inhaler as needed.  There is no question Alvarez has health issues, but his health is stable and has been aided effectively by routine monitoring and medication.

Of course Alvarez is at risk for contracting the virus at FCI Fort Dix.  However, the Court is persuaded by the government's submission that FCI Fort Dix has taken substantial measures to respond to the COVID-19 threat at its facility, which have mitigated its spread, and has the means to competently care for its inmate population.  For example, inmates and staff have been

issued masks and must wear them, and have been instructed on sanitation and social distancing; a medical questionnaire and temperature check is required for staff and necessary contractors entering the facility; and new inmates coming into FCI Fort Dix are screened for fever or symptoms and are quarantined for fourteen days before they are released to assigned housing units.  In addition, Alvarez is housed in the Low facility.  Among other COVID-related updates to the healthcare procedures in the Low facility, inmates now have their temperature checked and symptoms assessed every other day; and inmates with COVID symptoms are seen immediately.  (See Declaration of Dr. Nicoletta Turner Foster, the Clinical Director at FCI Fort Dix, at ¶¶ 15-28, filed in Wragg v. Ortiz, 20-cv-5496 (D.N.J.), and referenced at Doc. #167 at ECF 9).  Moreover, and importantly, FCI Fort Dix's handling of Alvarez's medical care is demonstrative of BOP's ability to provide adequate care to Alvarez, even if he were to contract COVID-19.

In support of his motion, Alvarez points to other cases in which courts in this district have found "extraordinary and compelling" circumstances warranting release based upon a respiratory ailment like asthma.  (Doc. #164 at ECF 19, n.77).  However, every case is unique, and the comparison to these cases fails to persuade.

For instance, Phillip Smith was a 62-year-old inmate at Metropolitan Detention Center in Brooklyn ("MDC") who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma (a cancer of bone marrow).  United States v. Smith, 2020 WL 1849748, at *1 (S.D.N.Y. Apr. 13, 2020).  MDC had placed Smith on a list of "high-risk" inmates especially vulnerable to contracting the disease.  Id.  Moreover, at the time his compassionate release motion was granted, Smith had served over ninety-eight months of his 120-month sentence, and a few days before the court granted his motion, MDC had scheduled Smith to be released to a halfway house within the following two weeks.  Id. at *1–2.  Finally,

the crimes of which Smith was convicted—conspiracy to commit access device fraud, conspiracy to produce false identification documents, and aggravated identity theft—do not remotely implicate the same dangers to the community as do Alvarez's crimes.

Similarly, the circumstances of Daniel Hernandez's imprisonment other than his asthma diagnosis favored a reduction of his sentence.  He had already served the substantial majority of his prison sentence, with an expected release date in four months at the time his motion—which the government did not oppose—was granted.  Also, Hernandez had cooperated against other gang members, leading the court to conclude that Hernandez "no longer . . . present[ed] a meaningful danger to the community if at liberty."  United States v. Hernandez, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020).  Given the nature and circumstances of Alvarez's crimes and his criminal history, the Court cannot make that finding here.[2]

Finally, as required by Section 3582(c)(1)(A), the Court has considered "the factors set forth in section 3553(a) to the extent that they are applicable," none of which supports Alvarez's early release.  The exceptionally serious nature of Alvarez's offenses and Alvarez's criminal history warranted a lengthy sentence at the time it was imposed; those same factors counsel strongly against cutting that sentence by more than half.  Moreover, the sentence was designed to promote respect for the law and provide just punishment for the offense.  To so dramatically reduce the sentence in light of the current public health crisis would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law.  And shortening

---

[2] Defendant also cites to a case from the District of Connecticut, United States v Norris, 17-cr-106, 18-cr-243 (D. Conn. Apr. 16, 2020), which is similarly unpersuasive here.  In that case, the court released the defendant six months from the end of a 21-month sentence for selling heroin on two occasions.  Moreover, the defendant was eligible for release to a halfway house or home confinement within one month.  And, as in Hernandez, the government did not oppose the motion.

Alvarez's sentence by approximately ten years would undermine two other critical sentencing objectives in this case: the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. These sentencing factors not only supported the sentence at the time it was imposed, but they also weigh strongly against Alvarez's early release, especially given the violent and sexually predatory conduct for which Alvarez was convicted. And if Alvarez were released, he would again have access to isolated and vulnerable women like the victims he exploited in this case.

Accordingly, defendant Nicholas Alvarez's motion for a reduction of his term of imprisonment is DENIED.

Dated: July 6, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge